IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISLAND PEAK GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-00838-N |
| | § | |
| ERIC STARK, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff Island Peak Group, LLC d/b/a Texas Tax Protest's ("TTP") motion for a temporary restraining order ("TRO") [3]. The Court concludes that TTP has, with respect to some but not all elements of the requested relief, carried its burden to demonstrate a likelihood of success on the merits, irreparable harm without an injunction, and that the balance of equities — between the parties and in consideration of the public interest — favors entry of an injunction. Accordingly, the Court grants the motion in part and issues a temporary injunction against Defendant Eric Stark.

### I. THE ORIGINS OF THE MOTION

TTP is a provider of property tax protest representation and advisory services in Texas and other states.[1] Pl.'s Compl. ¶ 6 [1]. Stark worked at TTP as the Director of

---

[1] The facts set out in this Order are drawn entirely from TTP's filings because Stark has not yet appeared or filed any documents in this case. The Court contacted Stark after he was served, setting a deadline of April 22, 2022 to respond to the present motion. However, Stark did not file a response.

ORDER – PAGE 1

Commercial Development from February 2018 until his termination in March 2022. *Id.* ¶¶ 15, 44. Stark's work responsibilities included marketing, obtaining new commercial clients, attending tax assessment hearings, and assisting with data analysis related to such hearings. *Id.* ¶¶ 16–17.

At the outset of his employment with TTP, Stark signed an employment agreement that contained restrictive covenants and a provision dealing with Stark's use of TTP's confidential and proprietary information. *Id.* ¶¶ 15, 24–33. In pertinent part, these read:

> 5. **Confidential Information.** Employer agrees to provide Employee with Confidential Information (defined below), trade secrets, and specialized training . . . . Employee acknowledges that the Work and the business information and techniques developed or acquired by Employer relating to its business, including but not limited to, financial information, projections, assessments or any other reports, data and materials, ideas, lists and information relating to past, present and prospective clients and customers and the acquisition of same, software development and application, concept and design development, schematic designs, protest methodologies, advertising and marketing plans, information and materials . . ., advertisements, selling procedures and techniques, fee agreements and structures, pricing agreements, client contracts, the terms of Employee's engagement, and business concepts, projections and plans, used by Employer in its business, in any form or medium and whether or not labeled or identified as confidential, constitute valuable trade secrets or confidential information (referred to hereafter collectively as "Confidential Information"), which are and shall be the exclusive property of Employer. . . . Employee has had, and will have, access to such Confidential Information, and Employee agrees not to disclose or use such Confidential Information except in the performance of Employee's responsibilities and duties on behalf of Employer. If Employee is required by applicable law to disclose any Confidential Information, Employee shall (i) provide Employer with prompt notice before such disclosure . . . and (ii) cooperate with Employer . . . in attempting to obtain [a protective] order or assurance [of confidential treatment].
>
> 6. **Restrictive Covenants.** . . . (b) <u>Non-Competition</u>. During Employee's employment and for a period of eighteen (18) months following the termination of Employee's employment for any reason . . . ("***Restricted***

ORDER – PAGE 2

***Period***"), Employee shall not, and shall not permit any of his affiliates to, either directly or indirectly, either for the benefit of Employee or any other person or entity to: (i) engage in, assist, participate in, or perform services for or related to, the Business (as defined herein), anywhere in any city, county, or locality where the Employer is engaged in the Business during the term of Employee's employment with the Employer, <u>provided</u> <u>that</u> Employee performs duties for Employer, has responsibility or supervisory authority for, or otherwise has Confidential Information regarding the Business in such city, county, or locality ("***Restricted Territory***"); (ii) call on, solicit or service any Business Relation with respect to a person or entity engaged in the Business in any part of the Restricted Territory, including, without limitation any business which incorporates in its products for sale or distribution, any products and services supplied to such person or entity engaged in the Business in any part of the Restricted Territory; or (iii) induce or attempt to induce any Business Relation to cease doing business with Employer, or in any way interfere with the relationship between any such Business Relation and Employer.

Aff. of Nicholas Olenec, Ex. A ¶¶ 5–6 [5] (emphasis in original).

Additionally, the employment agreement included the following return of property provision that required Stark to return or destroy various work equipment and materials upon his termination:

7.    **Return of Property.** Upon termination of employment . . . Employee shall: (a) provide or return to Employer any and all Employer property, including security devices, employer credit cards, network access devices, computers, cell phones, smartphones, PDAs, equipment, manuals, reports, files, books, compilations, work product, e-mail messages, recordings, tapes, disks, thumb drives or other removable information storage devices, hard drives, and data and all Employer documents and materials belonging to Employer and stored in any fashion, including, personal notes, summaries, abstracts, documents and reproductions in any medium (including computer copies) relating to Employer's business, including those that constitute or contain any Confidential Information, that are in the possession, custody or control of Employee, whether they were provided to Employee by Employer or any of its business associates or created by Employee in connection with Employee's employment by Employer; and (b) at Employer's election either: (i) provide or return or (ii) delete and destroy all copies of any such documents and materials that remain in Employee's possession, custody or

control, including those stored on any non-Employer devices, networks, storage locations and media in Employee's possession, custody or control.

*Id.* ¶ 7.

According to TTP's managing member and principal, Nicholas Olenec, Stark at some point obtained a spreadsheet containing TTP's confidential compensation structure. Aff. of Nicholas Olenec ¶ 18. With this information in hand, Stark sent a flurry of late-night emails to various coworkers. Collectively, Stark's messages included invitations to a meeting about compensation structures, profanity and other inappropriate language, and statements that certain employees were overpaid. *Id.* ¶¶ 19–23, Exs. B–E. TTP executives suspended Stark's access to his work accounts pending investigation and ultimately terminated Stark after meeting with him later that day. Aff. of Nicholas Olenec ¶¶ 24, 26–27.

Various communications Stark sent to TTP employees in recent weeks have included statements (and in one case a file attachment) indicating Stark had retained copies of his work emails and information about TTP's clients. *Id.* ¶¶ 25, 31–34, Exs. F–H. Further, Olenec learned that Stark's profile on LinkedIn (a social media and professional networking platform) states that he is an independent property tax consultant specializing in multifamily and student housing. *Id.* ¶ 35, Ex. I.

TTP filed this lawsuit against Stark based on his allegedly unlawful possession and use of confidential information, bringing claims for breach of contract, violation of state and federal trade secret laws, tortious interference with contract, and injunctive relief. TTP now moves for a temporary restraining order (1) prohibiting Stark from violating the

ORDER – PAGE 4

various restrictive covenants and confidentiality provisions of his employment agreement; (2) requiring Stark to return his work equipment and confidential information; and (3) requiring Stark to preserve records and provide TTP with certain information relevant to this case.  *See* Pl.'s Mot. for TRO.

## II. LEGAL STANDARD FOR A TEMPORARY INJUNCTION

To obtain a preliminary injunction, a party must establish (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendant; and (4) that the granting of the preliminary injunction will not disserve the public interest.  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572–73 (5th Cir. 1974)). A preliminary injunction "is appropriate only if the anticipated injury is imminent and irreparable," *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975), and not speculative. *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 694 (N.D. Tex. 2015); *see also Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient" to show irreparable harm).

A TRO is a "highly accelerated and temporary form of preliminary injunctive relief."  *Hassani v. Napolitano*, 2009 WL 2044596, at *1 (N.D. Tex. 2009).  As such, a movant must establish the same four elements as for a preliminary injunction.  However, TROs are generally restricted to "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc.*

*v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

### III. TTP Has Not Established a Substantial Risk of Irreparable Harm with Respect to Stark's Competition or Solicitation

The Court declines to enter a temporary restraining order prohibiting Stark from competing with TTP or soliciting TTP's clients or employees because TTP has not shown a substantial threat of irreparable harm.[2]  The only record evidence that suggests Stark has competed with TTP or plans to do so is Stark's LinkedIn profile stating that he is an independent property tax consultant and (more abstractly) Stark's attachment of a spreadsheet with client information to an email, which TTP interprets as a threat to use its confidential information.  But there are no facts showing that Stark has actually provided tax services, diverted TTP's customers, or used TTP's proprietary information to compete.  Nor is there evidence that Stark has contacted or plans to contact TTP's clients beyond a vague email that may have been intended as a threat to use or disclose confidential information in an unknown manner.  The Court determines this showing is insufficient to satisfy TTP's burden of showing a substantial threat of irreparable harm based on Stark's competition or solicitation of TTP's clients.

Further, the record is devoid of any indication that Stark has solicited or might solicit TTP's employees.  TTP merely points out that he "may" and "is in the position" to do so.

---

[2] Because the Court determines TTP has not made the showing required for a TRO prohibiting violations of the noncompetition and nonsolicitation clauses, the Court need not decide here whether those restrictions are enforceable.

Pl.'s Br. Supp. Mot. for TRO 1, 10 [4].  In sum, even if Stark's competition or solicitation of clients or employees can cause irreparable harm, TTP has failed to show that such harm is likely to occur.  Accordingly, the Court denies TTP's request for a TRO enjoining Stark from (1) providing certain tax-related services or (2) soliciting TTP's clients or employees.

### IV.  TTP HAS OTHERWISE ESTABLISHED THE FOUR ELEMENTS REQUIRED FOR A TRO

As explained more fully below, the Court determines that TTP has made the requisite showing for a TRO requiring Stark to return TTP's property and enjoining him from using or disclosing TTP's confidential information.

#### A.  Likelihood of Success on the Merits

As a threshold matter, the Court must determine whether TTP has demonstrated a likelihood of success on the merits.  This element requires that the movant establish a prima facie case; it does not require the movant show an entitlement to summary judgment. *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011).  Courts look to substantive standards supplied by the law giving rise to the underlying cause of action.  *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990).

In this case, TTP seeks an injunction to prevent the alleged ongoing breach of the terms of its employment agreement with Stark.  Under Texas law, the "elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the breach."  *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.).

The Court has no reason to doubt that a valid contract exists or that TTP performed its duties under the agreement here. TTP provided a copy of a signed employment agreement executed by Olenec and Stark along with Olenec's declaration that Stark signed the agreement as a condition of his employment. Aff. of Nicholas Olenec ¶ 16, Ex. A. Texas courts have held that a promise by an employer to provide confidential information and a contemporaneous promise by the employee not to disclose that information create an enforceable agreement. *Curtis v. Ziff Energy Grp., Ltd.*, 12 S.W.3d 114, 118 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The record shows that TTP in fact gave Stark access to its equipment, documents, and confidential information for use during his employment. For these reasons, the Court proceeds to assess TTP's likelihood of success at showing breach and damages.

The Court agrees that TTP has established a likelihood of success on the merits on its claim for breach of at least the return of property provision. That clause unambiguously requires Stark to return all physical equipment belonging to TTP upon termination of his employment. The clause also requires him to return all documents, data, and other materials relating to TTP's business, including email messages. However, Olenec's affidavit states that Stark failed to return several pieces of equipment belonging to TTP including a computer. Aff. of Nicholas Olenec ¶ 28. Further, Stark's emails and text messages indicate he has retained copies of documents relating to TTP's business. *Id.* ¶¶ 25, 32–34, Exs. F–H. Specifically, the record shows Stark stated that he "saved [his Microsoft] Outlook.pst files" and has "all [his] old emails downloaded to [his] machine" and, after his termination, sent a spreadsheet file to another TTP employee containing

ORDER – PAGE 8

information about over 5,000 client accounts.  *Id.*  Because the retained equipment and files are plainly subject to the return of property provision, the Court determines TTP has demonstrated a likelihood of success on the merits with respect to its breach of contract claim.

### B.  Irreparable Harm

The Court agrees that TTP has demonstrated a substantial threat of irreparable harm. If Stark is allowed to retain TTP's property and operate without restriction, there is a substantial risk of use or disclosure of TTP's confidential and proprietary information, including but not limited to documents in Stark's possession containing details about TTP's clients and compensation structure.  Stark's use or disclosure of client information may also result in a loss of goodwill through exposure of information in Stark's possession about TTP's clients that is not publicly available, such as their tax records and contact information.  *See* Aff. of Nicholas Olenec ¶¶ 9, 33.  Accordingly, the Court holds TTP has established that without an injunction, it will likely suffer irreparable harm.

### C.  Balance of Hardships

TTP will likely suffer greater harm if the Court does not issue the injunction than Stark will endure if the Court grants relief.  Continued violation of the agreement, as explained above, may substantially impair TTP's goodwill and control of its confidential and proprietary information — precisely the interests it sought to protect by means of the confidentiality and return of property provisions of Stark's employment agreement. Notably, due to Stark's failure to respond, the burden of complying with a TRO here is largely unknown to the Court.  Enforcing the agreement will require Stark to return and

refrain from using property and information that does not belong to him.  Additionally, the burden imposed by the temporary injunction goes no further than the terms to which Stark voluntarily consented when he executed his employment agreement.  For the reasons above, the Court determines the balance of hardships favors the entry of a TRO requiring return of TTP's property and enjoining Stark from using or disclosing TTP's confidential information.

### D.  Public Interest

Here too, the Court's analysis is hampered by Stark's failure to respond to the motion.  TTP argues that in Texas it "is in the public interest to uphold contracts and to enforce valid [] agreements."  Pl.'s Mot. for TRO 22 (quoting *Champion Nat'l Sec., Inc. v. A&A Sec. Grp., LLC*, 2021 WL 1400979, at *6 (N.D. Tex. 2021)).  As explained above, the Court has no reason to believe the employment agreement here is invalid or unenforceable.  The Court is unaware of any public policy of Texas that would be disserved by the entry of temporary injunctive relief here.  As such, the Court concludes that enforcement of this agreement by way of temporary injunction will serve the public interest.

### V.  SOME OF TTP'S REQUESTED RELIEF IS PROPERLY LEFT FOR DISCOVERY

Finally, the Court addresses remaining aspects of the requested injunctive relief that are properly dealt with during discovery.  TTP requests that the TRO include an order that Stark prepare and disclose a list of TTP clients he has contacted and that Stark give TTP his electronic devices for TTP to investigate.  *See* Pl.'s Mot. for TRO ¶¶ 1(e), 4.  These

ORDER – PAGE 10

measures are not designed to avoid irreparable harm but to discover information relevant to the case.  Thus, the Court declines to grant such relief at this time.  TTP also requests an order prohibiting Stark from destroying or otherwise making unavailable records or documents relating to the events in this action.  Pl.'s Mot. for TRO ¶ 5.  The Court reminds both parties that spoliation of evidence is already improper and such conduct is sanctionable.  *See, e.g.*, *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).  The Court determines the TRO is properly limited to relief regarding Stark's return of TTP's property and an order prohibiting Stark from using or disclosing TTP's confidential and proprietary information.

CONCLUSION

For the foregoing reasons, the Court concludes that TTP has demonstrated its entitlement to temporary injunctive relief against Stark.  Accordingly, the Court grants TTP's motion for a TRO.

Signed April 27, 2022.

David C. Godbey
United States District Judge